HOLMES, Judge:
This is an appeal by The Gadsden Times from a jury verdict requiring it to pay $7,000 to Troy Gulledge. -Gulledge, for reasons irrelevant to this appeal, brought the action in the lower court as John Doe.
The issue on appeal is whether the Times was contractually bound to pay Gulledge, appellee herein, $7,000 as a reward. We hold that it was not and, accordingly, reverse and remand.
The record reveals the following:
On Monday, November 26, 1973, Reverend Edward Pace, a minister residing in Gadsden, Alabama, was shot and killed at his home. Subsequent to his murder, the appellant-Times published articles concerning a reward for “information leading to the conviction” of his slayers. Pertinent excerpts from and the dates of publication of the articles follow:
Wednesday, November 28:
“A reward of $3,000 has been offered by citizens of the community for information leading to the conviction of the slayers of the Rev. Edward Pace on Monday night.
“A statement from the Gadsden City Commission announcing the reward says:

“ ‘A reward of $3,000 has already been committed by interested citizens in the community and it is expected that $5,000 will be offered by this evening.’ ”
Thursday, November 29:
“Gov. George C. Wallace has authorized a reward of $1,000 for information leading to the arrest and conviction of persons responsiblé for the murder of a Gadsden minister. .

“Previously, a $3,000 reward was announced in the case by the City Commission, the money coming from citizens of the community.
“Thus, the total reward money now stands at $4,000.”
Friday, November 30:
“Mayor Les Gilliland announced today a total of $5,000 is offered for information leading to the conviction of the slayers of the Rev. Edward Pace.
“Previously, a total of $4,000 had been announced by the city commission.”
Saturday, December 1:
“Contributions total $6,000 today in a fund for information leading to the conviction of the slayers of the Rev. Edward Pace.
“The reward has mounted steadily with contributions from concerned citizens..."
Sunday, December 2:
“Contributions today soared to $8,000 for the arrest and conviction of the slayers of the Rev. Edward Pace.
“Over $7,000 has been contributed to the reward money from concerned citizens since the black minister was slain at his residence Monday night.

“Two persons have been arrested and a murder warrant has been sworn out for a third suspect in the murder.”
After the slaying, Gulledge provided the Gadsden Chief of Police, Charles G. Cary, with information pertaining to the killing. Specifically, Gulledge gave Cary the name of an individual, Ronnie Battles, who reportedly was present at or within 100 yards of the scene of the murder when it occurred.
The date on which Gulledge initially contacted Cary is unknown. However, both Cary and Gulledge testified that it was two *1363 or three days prior to the arrest of the suspects. Cary testified that it was Wednesday or Thursday night. Gulledge himself testified that it was on a “week night.” Gulledge also stated that he knew of the reward prior to notifying the police.
After obtaining Battles’ name from Gul-ledge, the police brought Battles in for questioning. The exact date of this questioning is unknown. However, the information elicited from Battles resulted in issuance of three arrest warrants on Saturday, December 1. Two of the suspects, Aubrey Gene Arledge and Ricky Glenn Ar-ledge, were arrested later that same day. On Sunday, December 2, a third suspect, Bruce Wheeler Botsford, was arrested.
Thereafter, Botsford was convicted of the murder of Reverend Pace; R. Arledge plead guilty; and A. Arledge was tried and acquitted.
Gulledge received the state reward of $1,000. He then sought to obtain the other portion of the reward money referred to in the various Times articles. To this end, he contacted one member of the city commission, the city attorney, and Chief Cary, none of whom had any information regarding the other $7,000 in reward money.
The former mayor of Gadsden, Leslie Gil-liland, testified that he knew of no citizens who had contributed to a reward. Neither was he aware of any money which had been collected by the city commission for that purpose. He stated he had no recollection of telling the Times of the existence of a $3,000 or $5,000 fund payable to one who provided information leading to the arrest and conviction of Reverend Pace’s killers.
Gulledge next sought to obtain the reward from the Times. No Times employees were aware either of the existence of the reward money or of any “concerned citizens” who were to provide such money.
When the Times failed to pay Gulledge the $7,000 he filed suit alleging that the Times had published and circulated in Eto-wah County on Sunday, December 2, 1973, an article, the pertinent portion of which is set forth supra, and that he, in reliance on this article and other “previous published rewards of various amounts,” furnished the desired information solicited by the articles. The complaint alleged the Times had-“breached its offer of reward and contract” in that he, in relying on the representations of the Times, had performed the services required of him to entitle him to the payment of the $7,000 reward.
A jury trial was had on August 19, 1976, and as previously stated, the verdict held the Times liable for payments of $7,000 to Gulledge. From the denial of its motion for a new trial, the Times takes this appeal.
Appellant Times asserts numerous grounds for reversal on appeal. The conclusion we reach necessitates addressing only one of these grounds.
The Times contends, as it did in its motions for a directed verdict and new trial, that the knowledge of an alleged offer of a private reward, prior to the performance of the action requested, is an essential element of the right to recover that reward. The Times states such element is here absent. Put another way, the Times states that rewards are merely a particular form of contractual agreement. Being governed by the law of contracts, an offer and acceptance are mandatory. Here, Gulledge could not possibly have accepted the alleged offer made by the December 2 article, since he had acted prior to its publication. The Times asserts a valid proposition of law which, in this instance, requires reversal of the judgment entered below.
Generally, the obligation to pay a reward rests exclusively on a contract. No one is bound to pay a reward unless he had contractually obligated himself to do so. 67 Am.Jur.2d Rewards §§ 2, 3.
Jurisdictions are split over whether one must have knowledge of a reward at the time of performing the services for which the reward is offered in order to be entitled to the reward. 53 A.L.R. 542. Alabama, however, as do the majority of jurisdictions, requires such knowledge.
*1364 “[I]f one offer a reward, and another, knowing of the offer, shall do the lawful thing proposed to be rewarded, there is a contract supported by a consideration; and that the assent to the contract is given by the party claiming the reward, when he performs the designated act. . . ” [Emphasis supplied.] (Morrell v. Quarles, 35 Ala. 544, 550 (1860))
Here, the evidence discloses that Gulledge had knowledge of a reward at the time he supplied the information. However, the information he possessed at the time of his action could in no way have been construed to constitute an offer by the Times.
Gulledge testified that he provided information to the chief of police on a week night, two or three days before the arrests of the suspects. The suspects were arrested on Saturday, December 1. Hence, Gul-ledge’s testimony reveals that he provided the information on Wednesday or Thursday. Likewise, Cary, the Chief of Police, declared Wednesday or Thursday to be the date on which Gulledge first contacted him.
Thus, it is obvious that Gulledge could not have given the information in reliance on the Times’ Sunday, December 2, article, as that article was published only after the arrests of the suspects.
The record clearly establishes that Gulledge acted prior to Saturday, December 1, the date warrants were issued and two suspects arrested; and examination of the Times articles published prior to that date discloses no “offer” on behalf of the Times. While the November 28-30 articles speak of reward money, the reward is attributed to the city commission, Mayor Leslie Gilliland, and/or concerned citizens. In none of these articles does the Times purport to be the offerer of a reward. Thus, Gulledge at the time he gave the information, could not reasonably be deemed to have been accepting a contractual offer by the Times.
That he acted in reliance on one of these November articles is apparent. When attempting to claim the reward, he first contacted city officials. It was only after these officials disavowed any knowledge of the reward money that Gulledge contacted an attorney, who thereafter contacted the Times to claim the reward for Gulledge.
One who renders a service to the public by providing information which aids in the apprehension of criminals is to be commended. It is indeed unfortunate that there was no reward money as reported by the Times articles. However, we are bound by the law of this state, which permits one to collect a reward offered by a private party only if he knew of such offer at the time of his action. Morrell, supra. The record reveals that Gulledge acted prior to the publication of any article which might reasonably have been construed to constitute an offer of reward by the Times. Thus, as a matter of law, there could have been no contract between the parties. Consequently, the trial court’s failure to grant the Times’ motion for a directed verdict on the grounds that the evidence failed to establish the breach of an offer of contract by the Times constituted reversible error.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P. J., and BRADLEY, J., concur.